UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ROMMEL E. GRIFFIN, SR.                    CIVIL ACTION

VERSUS                                    NO: 08-2000

UNITED PARCEL SERVICE, INC.               SECTION: J(5)

**ORDER AND REASONS**

Before the Court is Defendant, United Parcel Service, Inc.'s ("UPS") **Motion to Dismiss for Failure to State a Claim and/or for More Definite Statement (Rec. Doc. 4).** This motion, which is opposed, was set for hearing on August 6, 2008 on the briefs. Upon review of the record, the memoranda of counsel, and the applicable law, this Court now finds, for the reasons set forth below, that Defendant's motion should be granted in part and denied in part.

**Background Facts**

Plaintiff alleges that after working for UPS for approximately 28 years, he suffered age, race, and disability discrimination, as well as constructive discharge after taking disability leave to recover from stress and diabetes in February

2006.[1]  Specifically, he alleges that he was not reinstated to the "twilight operation" Hub Manager position he held before his disability leave, and he was not promoted to the Employee Relations Manager ("ERM") position.  Instead, both of these positions were given to younger, less experienced white males.

As a result, Plaintiff filed a Charge of Complaint with the Equal Employment Opportunity Commission ("EEOC") on or about May 22, 2007.  However, the EEOC failed to timely investigate the charge, and at the request of Plaintiff, issued a Notice of Right to Sue on the basis that more than 180 days had passed since the filing of the charge.

After receiving his right to sue notice, Plaintiff filed the instant action against UPS due to alleged age discrimination pursuant to 29 U.S.C. 621, *et seq.* (the Age Discrimination in Employment Act" or "ADEA"); race discrimination pursuant to 28 U.S.C. 2000e, *et seq.* ("Title VII"); and disability discrimination pursuant to 42 U.S.C. 12101, *et seq.* (the "ADA"). Specifically, Plaintiff claims that UPS refused to reinstate him to his prior position once he was released to return to work on or about June 21, 2006, and that UPS's refusal to do so was based on discriminatory motives.

---

[1]  Prior to taking disability leave, Plaintiff was employed as the Hub Manager of the UPS Center on Morrison Road in New Orleans, Louisiana, working the "twilight operation" from approximately 2:00 p.m. until the late evening hours between 10:00 p.m. and midnight.

**Discussion**

As set forth by the Supreme Court in <u>Bell Atlantic Corp. v.</u> <u>Twombly</u>, 127 S. Ct. 1955 (2007), the standard to be applied when deciding a Rule 12(b)(6) motion is not whether it is conceivable that some set of facts could be developed to support the allegations in the complaint, but rather whether the plaintiffs have stated enough facts in the complaint to allow a court to conclude that it is "plausible" that the plaintiffs are entitled to relief.  The Court must accept as true all well-plead allegations and resolve all doubts in favor of the plaintiff. <u>Tanglewood East Homeowners v. Charles-Thomas, Inc.</u>, 849 F.2d 1568, 1572 (5th Cir. 1988).

In its motion, UPS argues that Plaintiff has failed to plead facts sufficient to establish essential elements of his race, age, and disability claims against UPS.  Specifically, UPS argues that Plaintiff has simply asserted in a conclusory manner that UPS has engaged in discriminatory actions without alleging sufficient facts in support of his claims, and as a result, such claims should be dismissed.  UPS delineates its specific arguments as set forth below.

In the alternative, UPS argues that Plaintiff should be required to submit a more definite statement of his allegations pursuant to Rule 12(e) of the Federal Rules of Civil Procedure. According to UPS, Plaintiff has not alleged sufficient facts to

establish the bases for his claims of race, age, and/or

disability discrimination, and as a result, UPS is unable to

adequately respond to Plaintiff's Complaint.  Specifically, UPS

argues that Plaintiff's allegations are vague and ambiguous

insofar as, among other things: (1) Plaintiff has not stated the

precise grounds upon which his claims rest; (2) Plaintiff has not

alleged facts concerning his ERM claim that would reasonably

provide notice to UPS that he endured age and race

discrimination; and (3) Plaintiff has failed to allege specific

facts concerning his disability claim, i.e., the extent to which

he is significantly restricted in performing one or more major

life activities.

**A.    Failure to Exhaust Administrative Remedies As to the ERM**

**Claim**

Exhaustion of administrative remedies is a prerequisite to

filing suit under Title VII and the ADEA.  See <u>Dollins v. Rubin</u>,

77 F.3d 777, 781 (5th Cir. 1995).  Exhaustion occurs when a

complainant timely files a charge of discrimination with the EEOC

and receives a notice of right to sue.  42 U.S.C. 2000e-5(e)(f);

see also <u>Taylor v. Books-A-Million</u>, 296 F.3d 376, 379 (5th Cir.

2002).

UPS notes that while Plaintiff's Complaint states that "the

failure to offer him the Employee Relations position" was

"motivated in whole or in part by his age; and/or his race;

and/or his actual and/or perceived disability of diabetes; and/or

his perceived disability of inability to handle stress,"

Plaintiff does not make any reference to UPS's alleged failure to

give him the ERM position as a part of his EEOC charge on the

grounds of race, age, or disability.

In opposition, Plaintiff argues that while his EEOC charge

did not explicitly mention the ERM position, it did contain an

allegation that UPS violated Title VII by "accommodating white

employees, but not me because of my race (black)" and that UPS

"forc[ed] me into retirement by failing or refusing to return me

to work based on my age (55)."

In reply, UPS again urges that Plaintiff's EEOC charge is

devoid of any mention of the ERM position, devoid of any

allegations of a failure to interview, and devoid of any

allegations that the ERM position was filled by a "younger, white

male."

When a complaint alleges grievances not raised at the EEOC,

those allegations must be dismissed.  However, EEOC complaints

are broadly construed.  The scope of a judicial complaint is

limited to the "scope" of the EEOC investigation which can

reasonably be expected to grow out of the charge of

discrimination.  See McClain v. Lufkin Industries, Inc., 519 F.3d

264, 274 (5th Cir. 2008) (citing Pacheco v. Mineta, 448 F.3d 783

(5th Cir. 2006) ("[T]he plaintiff's administrative charge will be

read broadly, in a fact-specific inquiry into what EEOC investigations it can reasonably be expected to trigger.")).

This Court determines that Plaintiff's EEOC charge could reasonably have triggered an investigation into what position(s) Plaintiff was denied due to his race, etc.  Plaintiff clearly denominated race, age, and disability discrimination in his EEOC charge, so this is not a situation in which the Court must consider whether Plaintiff properly alleged a particular <u>form</u> of discrimination.  Instead, the inquiry is a purely factual one--would an EEOC investigation into the circumstances surrounding the ERM position have reasonably been triggered by Plaintiff's allegation that UPS accommodated younger "white employees" but not him because of his race and age.  Because this Court determines that such an investigation would have been triggered, UPS's argument as to exhaustion is without merit.

**B.   Age and Race Discrimination**

UPS argues that Plaintiff has failed to establish a *prima facie* case of age and race discrimination as to the circumstances surrounding the ERM position as well as Plaintiff's claim for "failure to return."

As to the ERM position, Plaintiff states in his Complaint in a conclusory manner that "the position was given instead to a younger white male whose experience and qualifications for the job were inferior to his."  Specifically, UPS argues that to

6

establish a *prima facie* case of age and race discrimination, a

plaintiff must show that (1) he was a member of the protected

class; (2) he applied for and was qualified for the position; (3)

he was rejected; and (4) the defendant hired someone outside the

protected class.  McDonnell Douglas Corp. v. Green, 411 U.S. 792

(1973); see also Bauer v. Albemarle Corp., 169 F.3d 962 (5th Cir.

1999).  In this case, according to UPS, Plaintiff fails to

demonstrate that he actually applied for the ERM position.

Instead, all of Plaintiff's allegations pertain exclusively to

his employment as Hub Manager, and he simply alleges in the

Complaint that "he was recommended for the [ERM] position," but

"he was not interviewed for that position."

    Regarding Plaintiff's claim alleging that UPS failed "to

return [Plaintiff] to a management position" because of age

and/or race and/or disability discrimination, UPS argues that

Plaintiff's allegations do not support such a conclusion.  To

establish a *prima facie* case of discrimination regarding the

failure to reinstate allegation, a plaintiff must allege (1) that

he is a member of a protected class; (2) that he was qualified to

return to a management position; (3) that the defendant refused

to return him to a management position; and (4) that he was

replaced by a member outside the protected class.  See McDonnell

Douglas, 411 U.S. 792.  According to UPS, Plaintiff admitted in

his Complaint that UPS informed him that he would be assigned to

a Hub Manager position on August 25, 2006.  For purposes of this
motion, such an allegation must be accepted as true.  Therefore,
according to UPS, it is clear that UPS never refused to return
Plaintiff to a management position.

In opposition, Plaintiff argues that he has stated causes of
action for age and race discrimination.  Specifically, Plaintiff
points to allegations in the Complaint whereby Plaintiff informed
UPS that he was ready to return to work, yet UPS refused to
return him to work despite the availability of jobs, such as the
ERM position and the management position he held prior to going
on disability, both of which were subsequently filled by younger,
white males with less experience.  In other words, Plaintiff
argues that he has sufficiently alleged that he was not offered
his position back and was denied the opportunity of interviewing
for other positions for which he was qualified.

Based on the foregoing, this Court determines that Plaintiff
has alleged sufficient facts to withstand a motion to dismiss;
however, his allegations would benefit from being set out in more
detail, particularly relating to the ERM claim.  Therefore,
rather than dismissing Plaintiff's claims at this time, Plaintiff
is to make a more definite statement of his claims alleging age
and race discrimination.

## C.   Disability Discrimination

UPS goes on to argue that Plaintiff has failed to make a

8

*prima facie* showing of discrimination under the ADA as Plaintiff has not alleged any facts to establish he is disabled under the ADA; any facts that he was discriminated against because of an alleged disability; or any facts that he was discriminated against because UPS "regarded" him as disabled because of his diabetes and inability to handle stress.

To state a claim under the ADA, a plaintiff must establish that (1) he has a disability; (2) he is qualified for the position for which he seeks employment; and (3) he was discriminated against because of his alleged disability.  Jenkins v. Cleco Power L.L.C., 487 F.3d 309 (5th Cir. 2007).  Once the plaintiff makes this *prima facie* showing, the burden shifts back to the defendant-employer to articulate a legitimate, non-discriminatory reason for the action, and once the employer does so, the burden shifts back to the plaintiff to establish by a preponderance of the evidence that the articulated reason was merely a pretext for unlawful discrimination.  McInnis v. Alamo Community College District, 207 F.3d 276 (5th Cir. 2000).

According to UPS, Fifth Circuit jurisprudence is clear to the effect that diabetes is not a *per se* disability under the ADA.  See Jimenez v. Potter, 2006 WL 3821527 (5th Cir. Dec. 22, 2006); Bayless v. Orkin Exterminating Co., Inc., 2003 WL 21195495 (5th Cir. May 5, 2003); Johnson v. Penske Truck Leasing Co., 2001 WL 238181 (E.D. La. Mar. 7, 2001).  Further, Fifth Circuit

9

jurisprudence makes clear that an alleged diagnosis of "post-traumatic stress disorder," much less Plaintiff's alleged "inability to handle stress" is not, in and of itself, a disability under the ADA.  See <u>Carter v. Ridge</u>, 2007 WL 4104349 (5th Cir. Nov. 19, 2007).  Furthermore, none of Plaintiff's allegations establish that he was substantially limited in performing any major life activity, including working, because of his diabetes or alleged inability to handle stress.[2]  In fact, Plaintiff alleges that following the counseling program he attended, his numbness and pain were gone and he was able to identify and manage his stress factors.  Therefore, UPS argues that Plaintiff has failed to allege that he was disabled under the ADA, and as such, he has not established a *prima facie* case of disability discrimination.

Similarly, UPS argues that Plaintiff has failed to allege a case of "regarded as" disability discrimination.  To be "regarded as" having a substantially limiting impairment, Plaintiff must show that he (1) has a physical or mental impairment which is not substantially limiting in his major life activities, but was

_____

[2]  The ADA defines a disability as (1) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment. See 42 U.S.C. 12102.  Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.  See <u>Toyota Motor Manufacturing v. Williams</u>, 534 U.S. 184, 197 (2002); see also 29 C.F.R. 1630.2(I).

treated as such by his employer; (2) has a physical or mental
impairment that substantially limits one or more major life
activities, but only because of the attitudes of others toward
the impairment; or (3) has no actual impairment at all but is
treated by his employer as having a substantially limiting
impairment.  29 C.F.R. 1630.2(1)(1)-(3); see also Waldrip v. Gen.
Elec. Co., 325 F.3d 652, 657 (5th Cir. 2003).

     According to UPS, in his Complaint, Plaintiff admits that on
August 23, 2006, UPS was willing to allow him to return to work
after he obtained a release from his physician.  Furthermore,
Plaintiff admits that he was never terminated; he took early
retirement.  As such, UPS argues that it did not regard Plaintiff
as having a substantially limiting impairment.

     In opposition, Plaintiff argues that he has stated adequate
facts that, if proven, will support a claim for discrimination
based upon "failure to accommodate his health-related request
that would have allowed him to more successfully manage and not
jeopardize his disability of insulin-dependent diabetes."
Specifically, Plaintiff states that he does not allege he is
disabled from the major life activity of "working."  Instead, he
is disabled from the major life activity of "eating."  See
Waldrip, 325 F.3d 655 (identifying "eating" as a "major life
activity).  As such, Plaintiff submits that he is either actually
disabled, or was perceived as disabled, and in either or both

circumstances, he was discriminated against in his employment.

Moreover, in response to UPS's argument that Plaintiff admitted

he was willing to return to work, Plaintiff admits that he was,

but only with the accommodation that he not be required to work

at nights, because to do so would jeopardize his ability to

manage his disability.

In reply, UPS argues that the allegation that Plaintiff is

somehow disabled from the activity of "eating" is nowhere

contained within Plaintiff's Complaint.  Notwithstanding this

fact, Plaintiff has not alleged that <u>his</u> diabetes substantially

limits <u>his</u> ability to eat.  Furthermore, Plaintiff's own exhibits

from health care providers make clear that he has no impairment

that substantially limits any major life activity.

As was the case above, rather dismissing Plaintiff's

disability discrimination claims at this time, Plaintiff is to

set forth a more definite statement of such claims, particularly

regarding his alleged disability, insofar as there is no *per se*

rule that diabetes is or is not a disability.  In fact, "the

determination of whether an individual has a disability is not

necessarily based on the name or diagnosis of the impairment the

person has, but rather on the effect of that impairment on the

life of the individual."  <u>Sutton v. United Air Lines, Inc.</u>, 527

U.S. 471, 483 (1999).  Therefore, "whether a person has a

disability under the ADA is an individualized inquiry."  <u>Id.</u> at

483.

**D.   Constructive Discharge**

UPS also argues that Plaintiff has failed to establish a claim for constructive discharge.  The test for a constructive discharge case is whether a reasonable employee would have felt compelled to resign.  Hailey v. Alliance Compressor, L.L.C., 391 F.3d 644 (5th Cir. 2004).  UPS states that although Plaintiff alleges that he "was compelled by financial necessity to take early retirement," none of the allegations in his Complaint indicate that a reasonable employee would have felt compelled to resign under the facts alleged in this Complaint.

As was the case above, Plaintiff is to set forth a more definite statement of this claim.  Accordingly,

**IT IS ORDERED** that UPS's **Motion to Dismiss for Failure to State a Claim (Rec. Doc. 4)** is hereby **DENIED.**

**IT IS FURTHER ORDERED** that UPS's **Motion for More Definite Statement (Rec. Doc. 4)** is hereby **GRANTED.**  Plaintiff is ordered to file a more definite statement of his claims not later than 20 days from entry of this Order.

New Orleans, Louisiana, this 13th day of August, 2008.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE