UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ROMMEL E. GRIFFIN, SR. | CIVIL ACTION NO. 2:08-cv-2000 |
| VERSUS | JUDGE CARL L. BARBIER |
| UNITED PARCEL SERVICE, INC. | MAGISTRATE ALMA L. CHASEZ |

*******************************************************************************

### PLAINTIFF'S STATEMENT OF UNCONTESTED MATERIAL FACTS

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff, Rommel E. Griffin, Sr., who submits his Statement of Uncontested Material Facts which are in addition to the Uncontested Material Facts set forth in the joint submission of the parties:

1. Plaintiff's mother and several of his ten siblings also have Type 2 Diabetes, and his father was diagnosed with diabetes in his seventies.

2. Plaintiff was initially able to manage his diabetes with medication, diet and exercise, but by 2004, his diabetes was so uncontrolled that he was prescribed injectable insulin as part of his regimen, in addition to medication, diet and exercise.

3. In November, 2006, Plaintiff's insulin dosage was increased, as a result of high blood sugar tests of over 200 for several weeks.

4. Plaintiff has continuously, to this date, followed a regimen for managing his diabetes that involves medication, insulin, exercise, checking his blood by finger prick several times daily, and the careful monitoring and management of his diet.

5. The injection of insulin and checking of Plaintiff's blood by finger prick requires sterile equipment and sanitary conditions.

6. Plaintiff injects his insulin at bedtime, at approximately 10:00 or 11:00 p.m., for the reason that when he formerly injected his insulin in the morning, he did not have favorable results in managing his blood sugar.

7. Plaintiff is constantly vigilant and must be constantly vigilant in determining when to eat, what to eat (balancing proteins and carbohydrates), and how much to eat, and that this requires, for him, consistent access to healthy food options and a consistent schedule which permits him to eat his meals and snacks within a particular range of time each day.

8. When Plaintiff does occasionally eat too large a meal, skip a meal, or eat too many carbohydrates or not enough protein, he begins to perspire and his skin becomes balmy, and frequently his vision becomes blurry.

9. Despite his best efforts, Plaintiff has not attained the blood sugar test goals set by his physicians. For example, on the hemoglobin test administered by his physicians, has never had a reading of 7; his testing ranges from high 7s to high 9s.

10. Although Plaintiff's morning fasting test is sometimes as low as 105, it frequently is as high as 150 or higher. For example, his blood test on January 3, 2010, was 197, although he had followed his regimen of diet, medicine, and insulin.

11. When Plaintiff feels stress, such as from employment, personal issues, or this litigation, he sees a correlation with his blood sugar readings, making it even more important to carefully manage his regimen, including his diet and medicine.

12. Plaintiff suffers from hypertension and occasional reflux in addition to his diabetes.

13. At the time Plaintiff requested the accommodation that he not be required to work at night, he had serious concerns that he would not be able to adequately and

consistently follow the medical and dietary regimen required to manage his diabetes if he could not sleep at night for each of the seven nights of the week, and eat his meals and take his medicine and insulin and check his blood at the approximate same times of each day.

14. On August 28, 2006, Plaintiff submitted to an examination by a UPS selected physician, Dr. Yuruk Iryboz. Dr. Iryboz stated in his report that Plaintiff "can work as a supervisor/manager, preferably during daytime since he is insulin dependent, diabetic, w/reflux and hypertension".

15. Prior to making its decision to deny Plaintiff's request for an accommodation, UPS did not request the medical records from Dr. Cameron, Dr. Thethi, or Dr. Iryboz, did not request any additional information from any of these physicians, and did not have any employer representative speak with any of these physicians.

16. Prior to making its decision, UPS did not meet with, interview or speak with Rommel Griffin concerning his request for an accommodation under the ADA.

                Respectfully submitted,

                /s/ Lisa Brener
                Lisa Brener (#1809)
                Lugenbuhl, Wheaton, Peck,
                    Rankin & Hubbard
                601 Poydras St., Suite 2775
                New Orleans, LA 70130
                Tel. (504) 568-1990
                Fax (504) 310-9195
                lbrener@lawla.com

                **Attorney for Plaintiff,**
                **Rommel E. Griffin, Sr.**

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of May, 2010, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ Lisa Brener
Lisa Brener